## Hood v. Zoning Board of Adjustment

*Thomas F. Doran* and *Samuel I. Sacks*, for appellants.

FORREST, J., August 8, 1955.—This is an appeal from the decision of the Board of Adjustment of Cheltenham Township denying an exception under article IV of the Zoning Ordinance of 1941, as amended, so as to permit the erection of a dwelling with lesser side yards and lesser area than prescribed by the ordinance.

After a hearing the board of adjustment made findings of fact. However, supplemental evidence was presented on appeal. Therefore, the court has the power to decide the case on the merits. See concurring opinion by Bell, J., in Walker v. Zoning Board of Adjustment et al., 380 Pa. 228, 235 (1955). We have considered all of the testimony from which there are made the following

### Findings of Fact

1. Appellants, Frank C. Hood and Mae W. Hood, are the owners of lot no. 89, Forrest Avenue (post office number 8241 Forrest Avenue), Cheltenham Township, Montgomery County, Pa. They acquired title by deed dated April 27, 1933, recorded in the office of the recorder of deeds of said county in deed book 1163, page 226. The lot is located 150 feet north-

easterly from Merion Road, and it has a frontage of 50 feet and a depth of 150 feet.

2. At the time appellants acquired title, under section 605 of the Zoning Ordinance of 1929, the lot was zoned "D residential". In such zone only one side yard nine feet in width or breadth was required.

3. Under section 402 of the Zoning Ordinance of 1941, a lot area of 10,000 square feet per family and a width of 70 feet is required, provided that in the case of a lot held in single or separate ownership at the effective date of the ordinance having an area of less than 10,000 square feet, or a width of less than 70 feet, a dwelling may be erected thereon when authorized as a special exception.

4. Under section 406 of said ordinance, "In the case of a single-family detached dwelling, there shall be two side yards, one on each side of the main building, together having an aggregate width of not less than 30 feet, but neither having a width of less than 10 feet, provided that in the case of a lot held in single and separate ownership at the effective date of this ordinance, of a width less than 70 feet, a single-family detached dwelling may be built thereon with side yards of less width when authorized as a special exception".

5. Appellants requested the board of adjustment for an exception so as to permit the construction of a single house, 34 feet wide, leaving side yards of the aggregate width of 16 feet. The premises will have a value of approximately $16,000.

6. Appellants' lot is situate in a neighborhood which is almost entirely developed. Next to such lot is a vacant lot having a width of 70 feet.

7. The lot adjoining the appellants' lot on the other side, being premises known as 8239 Forrest Avenue, owned by Charles Waxman, contains a dwelling one extremity of which is eight feet from the appellants' property line.

8. The values of houses in the immediate neighborhood are between approximately $21,000 and $27,000.

9. If an exception is not granted, the lot will be usable only for a yard or for the construction of a 20-foot wide house which would resemble a row house and would not be in keeping with the character or size of the existing dwellings in the immediate neighborhood.

10. Mr. Brawn, the owner of the vacant lot adjoining the appellants' lot, objects to the granting of the exception, although the house on the other side of the Brawn lot is within 10 feet of his property.

11. The zoning board of adjustment denied the requested exception, stating as reasons that "it would be difficult for the petitioners to build a house on the lot which they own which would compare in character or size to the existing dwellings in the immediate neigborhood", "that the petitioner proposes to build the house on said lot for sale and not for occupancy and he was offered by an adjoining property owner a price which he fixed upon said lot but later refused to accept the offer unless it were increased by a substantial amount". In its written report the board indicated that it believed that the proposed dwelling would have a depreciating effect on adjoining properties and that since the petitioners evidently only desire to build for speculation and resale, there was insufficient reason to impose any hardship on other property owners in the neighborhood.

### Discussion

The Act of June 24, 1931, P. L. 1206, sec. 3107, as amended by the Act of May 27, 1949, P. L. 1955, sec. 59, 53 PS §19092-3107, authorizes the creation of a board of adjustment so that such board "may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose

and intent and in accordance with general or specific rules therein contained. . . .

"The board of adjustment shall have the following powers:

"(2) To hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinance; . . ."

Under section 1101 of the ordinance pertinent hereto, the aforementioned powers are specifically conferred upon the board. The act provides that upon appeal, "the court may reverse or affirm, in whole or in part, the decision appealed from as to it may appear just and proper".

Factors to be considered and weighed with others by the board or by the court in proper cases, are whether the proposed use of land would be in harmony with the character of the neighborhood or would unreasonably interfere with the use and enjoyment of adjoining property: Staley v. Lower Merion Township, 69 Montg. 407, at 418-19 (1954). The board or the court in proper cases, may allow an exception, even though the applicant fails to prove that the granting of the exception will not be detrimental to the health, safety, morals and general welfare of the immediate vicinity: Borden Appeal, 369 Pa. 517 (1952); Staley v. Lower Merion Township, supra. Nevertheless: "Easy exceptions . . . will soon break down and nullify any zoning ordinance. . . . In order to justify a special exception there must be something unique about the property for which the exception is sought": Schmitz v. Abington Township, 68 Montg. 267, 269 (1952).

With the foregoing principles in mind, we have considered the reasons advanced for the appeal from the decision of the board and the evidence pertaining thereto. Appellants contend that strict compliance with the present ordinance would be an unjust hardship

and would prevent the erection of a suitable building, and that the reasons stated for the decision of the board are improper and that there was no evidence that the proposed dwelling would adversely affect the neighborhood.

When appellants purchased their ground, only one side yard nine feet wide was required. It was permissible to erect twin houses. Eight years after appellants acquired title, the amending zoning ordinance was enacted so as to require side yards aggregating 30 feet. Previous to the amending ordinance other owners on the same street erected houses with side yards of a width of only 8 or 10 feet. Appellants are not requesting approval to build a house closer to the side line of their property than these other houses in the neighborhood. The house which appellants desire to build will be in keeping with the character of the immediate neighborhood, though perhaps somewhat less expensive than those on nearby lots. The primary objection is aesthetic, but it should be pointed out that there is merit in the contention that a house and well kept lawn may be more delightful to the eyes than the poison ivy and other weeds which presently reign unabated. The protestants admit that public health and safety are not issues and apart from aesthetics the only complaint of the witnesses before the board and in court was that there might be some depreciation in property values if the exception were granted. However, " '. . . A home owner cannot be deprived by zoning of a right to use his own property as he wishes merely because a zoning board believes that what he intends to erect is not artistic or aesthetic: Liggett's Petition, 291 Pa. 109, 118, 139 A. 619; White's Appeal, 287 Pa. 259, 266, supra; Miller v. Seaman, 137 Pa. Superior Ct. 24, 8 A. 2d 415 . . .' ": Medinger Appeal, 377 Pa. 217, 226 (1954).

In this case the zoning board evidently based its

decision on aesthetics and possible depreciation of values of adjacent properties. These factors are not to be disregarded but they are makeweight at best. The board refers to the prospect confronting the owners if the petition is denied, either sell the land to adjoining owners, at their price, or build a house. The board disregarded the fact that such house would be an architectural eyesore. The board stresses that land owners hold their properties subject to the power of municipalties to rezone. This is certainly true. However, when a township rezones an area, the development of which has been virtually completed, and which contains many nonconforming ones similar to the proposed one, the owners of isolated undeveloped lots in such area, who would suffer hardship by strict enforcement of the ordinance are entitled to the utmost consideration at the hands of zoning boards.

If the hardship is self-imposed, it is not unnecessary and the owner is not entitled to relief. However, when as here the hardship is created by the upgrading of an already zoned section, although it is not necessarily controlling, it entitles the owners of isolated pieces of land to more consideration than they would otherwise receive. Finally, the zoning board indicated in its opinion that the fact that the appellants are contemplating building for sale and profit rather than for their own occupancy affected their judgment. Without in any way deprecating the conscientious labors of the board, we comment in passing that such consideration has no place in these proceedings.

At the hearing before the court, Mr. Charles Waxman, a neighbor and protestant, was the sole witness. Surprisingly, however, he was not a bitter partisan; instead, he frankly stated that he has "no great objection, provided the house is on a par".

We are of the opinion that it is just and proper to reverse the decision of the zoning board and to grant

the exception to the ordinance, that such exception will be in harmony with the general purpose and intent of the ordinance, and that such action will be neither contrary to the interest of the particular parties affected nor to the public interest.

*Order*

And now, August 8, 1955, the decision of the Board of Adjustment of Cheltenham Township is reversed. It is directed that an exception be allowed by the board permitting appellants to build on their lot with side yards, each of which shall be eight feet in width, provided that they otherwise comply with the building and zoning laws of Cheltenham Township, and for that purpose the record is remanded to the board.

Exceptions to this decision and order may be filed within 20 days; otherwise this order shall become the final judgment of the court.